UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TAMMY POWELL and BOBBY POWELL,       )
individually and as court-appointed guardian of )
his wife, TAMMY POWELL,              )
        Plaintiffs,                  )
                                     )
    vs.                              )    1:08-cv-1621-TWP-TAB
                                     )
UNITED PARCEL SERVICE, INC.,         )
        Defendant.                   )

**ORDER ON PENDING MOTIONS**

I.  **Introduction**

Before the Court are three pending motions arising from a motor vehicle accident. A brief overview of the facts assists in putting these motions in context.

On September 16, 2008, a UPS truck was traveling along U.S. Highway 40, where the speed limit was 60 miles per hour. The UPS truck stopped in the highway to back into an adjacent driveway to deliver a package. Tammy Powell was driving behind the UPS truck and rear-ended that vehicle. Powell's vehicle left no skid marks, and her speedometer needle was stuck at approximately 62 miles per hour. [Docket No. 96, Ex. E at 2.] She sustained severe injuries and sued UPS for damages along with her husband Bobby.

Immediately before the accident, Richard Knose, who lives off Highway 40, was moving gravel outside his home approximately 500 feet from the point of impact. Plaintiffs' first motion seeks leave to redepose Knose—who is 79 and has some health concerns—to preserve his testimony for trial. Plaintiffs' second motion seeks to prevent UPS from obtaining their Verizon Wireless cell phone records, which UPS subpoenaed to evaluate whether cell phone use

contributed to the accident, among other reasons. Plaintiffs' final motion seeks leave to add new negligence theories to their complaint.

**II.      Discussion**

   *A.      Plaintiffs' motion to redepose Richard Knose*

Knose, who witnessed Powell's collision with the UPS truck, was deposed October 28, 2009. Plaintiffs subsequently learned that the 79-year-old Knose has a variety of cardiac health issues.[1] Plaintiffs now seek a video deposition of Knose, explaining that they view him as a key eyewitness, and that given his age and health conditions, they fear he may be unavailable to testify at trial.

UPS opposes Plaintiffs' request, which it characterizes as "merely an attempt to choreograph Mr. Knose's testimony the way they want it to appear before a jury." [Docket No. 84 at 4.] UPS first quibbles that Knose is not actually an eyewitness because he did not see the collision. UPS then stresses that Plaintiffs were aware of Knose's age at the first deposition but did not request a video deposition as they had done for other depositions in this case. Finally, UPS objects that a second deposition would be unreasonably duplicative and would require outlays for the video, transcript, attorney preparation and deposition attendance, and travel. In response to UPS's concerns, Plaintiffs offered to cover some of UPS's costs. Specifically, Plaintiffs agreed:

> to pay for the cost of burning a copy of the video to a DVD, and an extra copy of the deposition transcript. In the spirit of cooperation, Plaintiffs also agree to pay for the reasonable attorney's fees incurred for the time it actually takes for one of

---

[1]Plaintiffs have not provided any evidence of Knose's health issues. But UPS does not dispute Plaintiffs' descriptions, and, mindful that Plaintiffs' counsel made the representations under Rule 11, the Court accepts them as true.

2

the six UPS defense attorneys to attend the deposition, which should take approximately one hour of time.

[Docket No. 85 at 3.]

Federal Rule of Civil Procedure 30(a)(2)(ii) provides that a party must obtain leave to depose a person who has already been deposed in the case. The Court must grant leave to the extent consistent with Rule 26(b)(2), which provides that discovery must be limited when it is unreasonably duplicative, the party seeking discovery has had ample opportunity to obtain the information, or the burden of the proposed discovery outweighs its likely benefit.

Granting leave is appropriate. Knose may have seen only the collision's effects, but he heard the entire event. The video deposition will not be unreasonably duplicative because the first deposition has no visual component, and Plaintiffs have provided good reasons why a video deposition would be more helpful to the jury than the traditional transcript reading. Although Plaintiffs' counsel might have considered videotaping the deposition of then 78-year-old Knose, or inquiring about his health before the deposition, the Court accepts Plaintiffs' assertion that they did not learn of Knose's medical history until "long after" the deposition. [Docket No. 85 at 2.] It is particularly significant that Plaintiffs have agreed to alleviate much of the burden created by a second deposition. Although Plaintiffs' offer excludes preparation and travel time, these costs should be relatively minimal given that the deposition will be at Knose's Greenfield home, UPS has already deposed Knose, and UPS has local counsel. The Court therefore grants Plaintiffs' motion on the condition that Plaintiffs cover UPS's costs for the deposition DVD and transcript, and the reasonable attorney's fees for one UPS attorney to attend the deposition.

B. *Plaintiffs' motion for protective order*

In late October, UPS subpoenaed Verizon Wireless to produce Plaintiffs' cell phone records from September 1, 2008, to the present, including calls placed and received, dates and times of calls, and text messaging information. [Docket No. 87, Ex. A.] Plaintiffs request a protective order prohibiting Verizon from producing any records to UPS. Plaintiffs assert that UPS's subpoena is overbroad and the records are irrelevant and likely contain privileged communications. [Docket No. 87.] Plaintiffs also seek attorney's fees and costs incurred in bringing their motion. [Docket No. 86.]

UPS responds that its requests are appropriate. UPS asserts that it has some evidence that Bobby Powell may be having an affair, and that his cell phone records may provide further evidence of infidelity, which would be relevant to his loss of consortium claim. [Docket No. 91 at 7–8.] UPS argues that Tammy Powell's records are relevant to show whether she was texting at the time of the accident, to determine her current ability to communicate, and to determine the location of the missing phone she used on the day of the accident. [*Id.* at 8–9.]

UPS's reason for seeking Bobby's records appears far-fetched. UPS bases its affair theory on an August 12, 2010, medical record that "Tammy confronted her husband and confused [sic] him of having sexual relations with her best friend." [Docket No. 91, Ex. 15.] As recently as September, 13, 2010, Tammy was diagnosed with dementia and personality changes secondary to a traumatic brain injury, suggesting that her August 12 statement may not have been reliable. [Docket No. 106, Ex. B at 1, 6.] Moreover, the wording of the August 12 medical record is unclear and could be interpreted that Tammy was confused about whether Bobby was having an affair, or that Tammy accused Bobby of having an affair. Finally, UPS deposed the

4

alleged paramour on October 27, asking whether she called and texted Bobby but not inquiring whether the communications were more than platonic. The Court will not require production of Bobby's cell phone records on these grounds.

UPS's other rationales fare better. The Powells' damages are based in part on Tammy's inability to communicate. Yet the Powells admit that Bobby talks to Tammy "on his cell phone on a daily basis, usually multiple times." [Docket No. 106 at 4.] UPS is therefore entitled to discover recent cell phone records to assess Tammy's current communication abilities. And the Powells' cell phone records for the period immediately surrounding the September 16, 2008, accident are clearly relevant to liability.[2] UPS may therefore obtain records from Verizon Wireless for (1) the twenty-four hours before and the twenty-four hours after the September 16, 2008, accident; and (2) the thirty days before UPS's October, 25, 2010, subpoena.[3] The Powells may redact these records for privilege only[4] and must provide a complete privilege log for each redaction. Should these records provide a basis for further discovery, UPS may seek leave of Court to request additional records if the parties are unable to agree on the proper scope.

Last, the Court addresses UPS's hope that the Powells' cell phone records will lead to the phone Tammy had on the day of the accident. UPS believes that expert examination of the

---

[2]Indeed, the Powells previously provided a partially redacted billing statement showing cell phone activity for the twenty-four hours before and the twenty-four hours after the accident. [Docket No. 87, Ex. D.]

[3]These thirty days were selected to provide UPS with a view of Tammy's abilities before the Plaintiffs were on notice that their current phone records were at issue.

[4]The Court expects that the majority of these redactions will be for attorney-client privilege. The Powells argued that the records may be protected by physician-patient or spousal privileges [Docket No. 87 at 5], but as UPS points out, the Powells have waived some privileges by placing their health and marriage at issue. [Docket No. 91 at 13.]

5

phone will uncover data and text information which Verizon may no longer possess. [Docket No. 91 at 5.] Unfortunately, according to the Powells' counsel, "Tammy's actual cell phone is gone. Long gone." [Docket No. 91, Ex. 14 at 2.]

The cell phone that was in the car with Tammy during the accident could provide valuable information, such as text message dates, times, and content (none of which are included on the Powells' billing records). UPS may therefore inquire whether Verizon can determine when the cell phone that was in the car was last used. If Verizon is able to determine this, UPS may obtain that line's phone records for the twenty-four hours before the phone's last use.

The Court denies the Powells' fee request, which does not provide a basis for a fee award. [Docket No. 88 at 2.] In any event, UPS's position regarding the Verizon records is substantially justified.

        C.     *Plaintiffs' motion for leave to file amended complaint*

Plaintiffs seek leave to amend their complaint to add claims of negligence *per se* (i.e., that the UPS driver violated a statute which prohibits obstructing a highway) and negligent training, supervision, and retention of the UPS driver. [Docket No. 89.] Federal Rule of Civil Procedure 15(a)(2) provides that when a party can no longer amend as a matter of course, it may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The rule reflects a liberal view toward amendments, but "courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008).

Plaintiffs argue that their new claims meet this standard because the evidence on which they are based did not surface until after the CMP deadline to amend, the claims are not complex, and the underlying facts are already known to UPS. [Docket No. 90.] The CMP deadline for amending the pleadings has always been May 2, 2009. Twice, however, the Court granted motions to extend the CMP's discovery deadlines. [Docket Nos. 71, 77.] At no time did Plaintiffs seek to extend the deadline for amendments. Plaintiffs are correct that their proposed claims are not complex and that UPS is in possession of most, if not all, of the relevant facts. But Plaintiffs have known that the UPS truck was stopped in the highway at least since reviewing the crash report, which indicates that the truck was stopped in the highway. [Docket No. 96, Ex. E at 2, 5 ("Vehicle 1 stopped in the curb lane . . . .").] Moreover, the dispositive motion deadline has passed, precluding UPS from including these claims in its summary judgment motion, and a vast amount of discovery already has occurred. Under these circumstances, permitting additional belated negligence theories would unduly prejudice UPS. The Court therefore denies Plaintiffs' motion for leave to amend.

**III.   Conclusion**

The Court grants Plaintiffs' motion to redepose Richard Knose [Docket No. 82] on the condition that Plaintiffs pay for UPS's deposition DVD and transcript, and the reasonable attorney's fees for one of UPS's attorneys to attend the deposition.

The Court grants in part Plaintiffs' motion for protective order. [Docket No. 86.] UPS may obtain Plaintiffs' Verizon records for the twenty-four hours before and the twenty-four hours after the collision and for the thirty days before October 25, 2010. UPS may also obtain records for Tammy Powell's line for the twenty-four hours before the last use of the phone that

was with her on the date of the accident.

The Court denies Plaintiffs' motion for leave to file an amended complaint. [Docket No. 89.]

Dated: 01/13/2011

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Trevor J. Crossen
WAGNER REESE & CROSSEN, LLP
tcrossen@injuryattorneys.com

Melissa Forcum Danielson
KIGHTLINGER & GRAY
mdanielson@k-glaw.com

John P. Lock
O. Daniel Ansa
MORRISON ANSA HOLDEN ASSUNCAO & PROUGH, LLP
john.lock@ansalaw.com

Jason Ruskin Reese
WAGNER REESE & CROSSEN, LLP
jreese@injuryattorneys.com

Jennifer Wright Schick
MORRISON ANSA HOLDEN ASSUNCAO & PROUGH, LLP
jennifer.schick@ansalaw.com

Michael Wroblewski
KIGHTLINGER & GRAY
mwroblewski@k-glaw.com

D. Bryce Zoeller
KIGHTLINGER & GRAY
bzoeller@k-glaw.com